```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
WILLIAM JANDRES,

                        Plaintiff,
                                            ORDER
            -against-                       12-CV-3132(JS)(GRB)

NASSAU COUNTY MEDICAL CENTER,
NASSAU COUNTY SHERIFF'S DEPT.,
NASSAU COUNTY CORRECTIONAL
FACILITY, ARMOR CORRECTIONAL
HEALTH INC.,

                        Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:      William Jandres, Pro Se
                    11002521
                    Nassau County Correctional Center
                    100 Carman Ave.
                    East Meadow, NY 11554

For Defendants:     No Appearances
```

SEYBERT, District Judge:

On June 21, 2012, pro se plaintiff William Jandres ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 1983 alleging the violation of his civil rights by the defendants, the Nassau County Medical Center ("NCMC"), the Nassau County Sheriff's Dep't. (the "Sheriff's Department"), the Nassau County Correctional Facility (the "Jail"), and Armor Correctional Health, Inc. ("Armor") (collectively, the "Defendants"), accompanied by an application to proceed in forma pauperis. Upon review of the Plaintiff's declaration in support of his application to proceed in forma pauperis, the Court finds that Plaintiff's financial status qualifies him to commence this action without prepayment of the

$350.00 filing fee. 28 U.S.C. §§ 1914(a); 1915(a)(1).

Accordingly, Plaintiff's application to proceed <u>in forma pauperis</u> is GRANTED. However, for the reasons set forth below, the Complaint is <u>sua sponte</u> dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) unless Plaintiff files an Amended Complaint as set forth below.

BACKGROUND

Plaintiff's brief, handwritten Complaint, submitted on the Court's Section 1983 complaint form, alleges that, on August 10, 2011, Plaintiff "slipped and fell on the wet floor at E2/AB Hallway Housing Area" and that there were "no wet floor signs out to warn anybody of the dangers ahead." Compl. at ¶ IV. According to the Complaint, Plaintiff fell "in front of Corrections Officer Mr. Evans Badge # 210," who wrote up an "injury and/or incident report." <u>Id.</u> Plaintiff claims to have sustained "numerous injuries" to his "back, neck, left shoulder [sic], and right knee."

Although Plaintiff alleges that "medical failed [to provide] adequate medical treatment," he does not allege that he requested such treatment. Rather, Plaintiff has annexed to his Complaint a series of "Sick Call Request" forms signed by Plaintiff and allegedly submitted between August 10, 2011 and June 10, 2012, all requesting medical treatment for his claimed injuries allegedly

sustained on August 10, 2011.[1]  For example, the first such form, dated August 10, 2011, states that Plaintiff "fell in the hallway . . . [and] injured my wrist, shoulder & back, as well as hit my head."  Accordingly, Plaintiff states that he "feels it would be appropriate to receive exrays [sic] &, if necessary, MRI(s)."  See Sick Call Request Form, dated August 10, 2011, annexed to the Complaint as page 4.  The next form, dated August 19, 2011, requests only a "medication renewal - need something better.  Still having back pain - pins & needles.  Neck & Leg & shoulder also.  From the fall that happened on 8/10."  See Sick Call Request Form, dated August 19, 2011, annexed to the Complaint as page 5.  By Sick Call Request Form dated August 26, 2011, Plaintiff asked "can you please help me again since the 10th that I had the accident I have been in pain & it's getting worse."  See Sick Call Request Form, dated August 26, 2011, annexed to the Complaint as page 6.  Apparently, on August 27, 2011, Plaintiff was brought to "medical" but was not seen because, by Sick Call Request dated August 29, 2011, Plaintiff states "you called my down to medical on 8-27-11 on Saturday but I was sent back without being seen.  Can you please help me?  I have back, shoulder, & leg pain.  From when I fell in the hall way on 8/10/2011.  See Sick Call Request Form, dated

---

[1] Plaintiff has also included a Sick Call Request form, dated November 27, 2011, wherein he complains only of a toothache.  See Sick Call Request Form, dated November 27, 2011, annexed to the Complaint as page 17.

August 29, 2011, annexed to the Complaint as page 7. By Sick Call Request dated September 1, 2011, Plaintiff stated "I still need to see a doctor that can help me. I'm still in pain from that fall I had on 8/10/2011. My shoulder, neck and rt knee still hurt. I don't know what to do except keep writing. Please help." See Sick Call Request Form, dated September 1, 2011, annexed to the Complaint as page 8. The Sick Call Forms submitted by Plaintiff continue to request medical treatment for his claimed injuries allegedly resulting from his August 10, 2011 fall. On October 8, 2011, plaintiff acknowledges that he was seen by a "nurse" on September 22, 2011, but continues to request medical treatment from a doctor. See Sick Call Request Form, dated October 8, 2011, annexed to the Complaint as page 12. On October 17, 2011, Plaintiff again requests that a doctor diagnose his injuries. See Sick Call Request Form, dated October 17, 2011, annexed to the Complaint as page 13. On November 1, 2011, Plaintiff requested that his prescription for "Flexeril" be renewed because it "is helping me a little bit." Plaintiff also again requests that he be seen by a doctor. See Sick Call Request Form, dated November 1, 2011, annexed to the Complaint as page 14. On November 13, 2011, Plaintiff yet again asks for medical treatment, including that an MRI be ordered to diagnose his back, shoulder and knee pain. See Sick Call Request Form, dated November 13, 2011, annexed to the Complaint as page 5. At some point Plaintiff was apparently

4

examined by two doctors, namely Drs. Lora and Nova, but Plaintiff claims that these doctors are "not doing anything to help me" and, accordingly, Plaintiff requests that he be seen by a doctor other than Lora and Nova. The next relevant form, dated December 11, 2011, reflects that Plaintiff must have been examined and x-rayed because he requests the results of the x-ray and requests an MRI if the x-ray does not show anything wrong with him. See Sick Call Request Form, dated December 11, 2011, annexed to the Complaint as page 18. On March 20, 2012, Plaintiff continued to complain of neck, left shoulder, right knee and lower back pain and acknowledges that he was seen by the "orthopedic." Plaintiff complains, however, that the orthopedic doctor told him to return in two weeks and that it has now been five weeks since he was first seen by the orthopedic doctor. See Sick Call Request Form, dated March 20, 2012, annexed to the Complaint as page 23. On June 6 and June 12, 2012, Plaintiff attributes his injuries to a "car accident and/or the incident" - the August 10, 2011 fall on the wet floor. See Sick Call Request Forms, dated June 6 and 12, 2012, annexed to the Complaint as pages 26 and 27.

Plaintiff's Complaint describes that his neck, back, right knee and left shoulder have "sharp, chronic pain" and that he experiences "numbness and tingling" as well as a loss of feeling in his hand, causing Plaintiff to drop things. Compl. at ¶ IV.A. As a result, Plaintiff seeks "proper medical treatment, proper

5

diagnoses of my injury's [sic] and proper prescribed medications" as well as monetary compensation in total sum of three hundred and twenty million dollars ($320,000,000.00).

DISCUSSION

I. In Forma Pauperis Application

Upon review of Plaintiff's declaration in support of his application to proceed in forma pauperis, the Court finds that Plaintiff's financial status qualifies him to commence this action without prepayment of the $350.00 filing fee. See 28 U.S.C. §§ 1914(a); 1915(a)(1). Accordingly, Plaintiff's application to proceed in forma pauperis is GRANTED.

II. The Prison Litigation Reform Act

The Prison Litigation Reform Act, codified at 28 U.S.C. § 1915, requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i-iii); 28 U.S.C. § 1915A(a) & (b); Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). The Court is required to dismiss the action as soon as it makes such a determination. 28 U.S.C. § 1915A(a).

It is axiomatic that pro se complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read the Plaintiff's pro se Complaint

liberally, Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); Chavis v. Chappius, 618 F.3d 162, (2d Cir. 2010), and to construe the allegations therein "'to raise the strongest arguments'" suggested. Chavis, 618 F.3d at 170 (quoting Harris v. City of New York, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 124 (2d Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009)); see also Jackson v. Birmingham Board of Education, 544 U.S. 167, 171, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005).

A complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citations omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S.

at 555).

III. Section 1983

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United states . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person action under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)). Section 1983 does not create any independent substantive right; but rather is a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see also Rosa R. v. Connelly, 889 F.2d 435, 440 (2d Cir. 1989). With these standards in mind, the Court must consider the Plaintiff's Section 1983 claims against the Defendants.

A. Sheriff's Department and Jail

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue

8

or be sued." Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); see also In re Dayton, 786 F. Supp. 2d 809, 818 (S.D.N.Y. 2011); Hawkins v. Nassau Cnty. Corr. Facility, 781 F. Supp. 2d 107, 109 at n. 1 (E.D.N.Y. 2011); Melendez v. Nassau County, No. 10-CV-2516 (SJF)(WDW), 2010 WL 3748743, at *5 (E.D.N.Y. Sept. 17, 2010) (dismissing claims against Nassau County Sheriff's Department because it lacks the capacity to be sued). Here, both the Sheriff's Department and the Jail are administrative arms of Nassau County, without independent legal identities. Accordingly, they lack the capacity to be sued and thus Plaintiff's claims against both the Sheriff's Department and the Jail are **DISMISSED**.

To assert a Section 1983 claim against a municipal entity such as the sheriff's department or county jail, the proper defendant is the municipality itself because there is no respondeat superior liability under Section 1983. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To prevail on a Section 1983 claim against a municipality, a plaintiff must show "an injury to a constitutionally protected right . . . that . . . was caused by a policy or custom of the municipality or by a municipal official 'responsible for establishing final policy.'" Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) (quoting Skehan v. Village of Mamaroneck, 465 F.3d 96, 108-109 (2d Cir. 2006) overruled on other grounds by Appel v. Spiridon, 531 F.3d 138, 140 (2d Cir. 2008));

9

see also Monell, 436 U.S. at 690-901, 98 S. Ct. 2018. "Local governing bodies . . . may be sued for constitutional deprivations pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." Monell, 436 U.S. at 690-91 (citations omitted). To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of the policy-making officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. Sulehria v. City of New York, 670 F. Supp. 2d 288, 320 (S.D.N.Y. 2009); see also Davis, 224 F. Supp. 2d at 478.

Here, Plaintiff's Complaint is wholly devoid of allegations to support a plausible municipal liability claim. In an abundance of caution and given Plaintiff's pro se status, he is granted leave to file an Amended Complaint against the municipality, Nassau County, in accordance with the requirements set forth above. **Any Amended Complaint shall be filed within**

10

**thirty (30) days from the date that this Order is served upon the Plaintiff.**

    B.    <u>Armor</u>

Plaintiff names Armor as a defendant, but does not include any specific allegations against it. Armor is a private company contracted to perform medical services for inmates at the Nassau County Correctional Center. <u>Cofield v. Armor Correctional Health, Inc.</u>, No. 12-CV-1394 (SJF)(ETB), 2012 WL 12222326, *2 (E.D.N.Y. Apr. 11, 2012). A private employer may be held liable under Section 1983 for the acts of its employees where the employee acted pursuant to the employer's official policy, or where the private entity employer was jointly engaged with state officials or its conduct is chargeable to the state, or where the employer authorized or participated in the alleged constitutional deprivation. <u>Id.</u> (citing <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 323 (2d Cir. 2002)). In addition, "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that 'action pursuant to official . . . <u>policy</u> of some nature caused a constitutional tort.'" <u>Rojas v. Alexander's Dept. Store, Inc.</u>, 924 F.2d 406, 408 (2d Cir. 1990) (quoting <u>Monell</u>, 436 U.S. at 691, 98 S. Ct. at 2036 (emphasis in original)) (internal citations omitted); <u>see also</u> <u>White v. Moylan</u>, 554 F. Supp. 2d 263, 267–68 (D. Conn. 2008); <u>Martin v. Lociccero</u>, 917 F. Supp. 178, 184 (W.D.N.Y. 1995).

11

Here, Plaintiff has not alleged any facts that could make Armor liable for the actions of its employees. Accordingly, Plaintiff's claims against Armor are dismissed with prejudice **unless he files an Amended Complaint alleging a constitutional violation within thirty (30) days from the date that this Order is served upon him.** Plaintiff shall include facts concerning the acts or omissions of the employee[s] of this Defendant.

C. NCMC[2]

Public benefit corporations, such as the NHCC, are municipal entities for the purpose of Section 1983. See, e.g. McGrath v. Nassau Health Care Corp., 217 F. Supp. 2d 319, 330 (E.D.N.Y. 2002) ("Public benefit corporations are governmental entities for Section 1983's purposes."); Estes-El v. New York State Department of Motor Vehicles Office of Administrative Adjudication Traffic Violation Bureau, No. 95-CV-3454, 1997 WL 342481, at * 4 (S.D.N.Y. June 23, 1997) (holding that the liability of a public benefit corporation under Section 1983 "is governed by the principles set forth in Monell . . . and its progeny."); Sewell v. New York City Transit Authority, Nos. 90-CV-3734, 91-CV-1274, 1992 WL 202418, at * 2 (E.D.N.Y. Feb. 10, 1992) ("The 'policy or custom' requirement of Monell applies to public corporations as well as to

---

[2] NCMC is one of the facilities managed by the Nassau Health Care Corporation ("NHCC"), a public benefit corporation created under New York law, see N.Y. Pub. Auth. Law §§ 3400-3420. Accordingly, Plaintiff's claims against NCMC are construed to be claims against NHCC.

municipalities. . . . Hence, in order to maintain a cause of action under Section 1983 against [a public benefit corporation], the plaintiff must plead that an impermissible 'policy or custom' of that public benefit corporation denied him his federal rights."); see also Dangler v. New York City Off Track Betting Corporation, 193 F.3d 130, 142-43 (2d Cir. 1999) (applying Monell to claims against the OTB, a public benefit corporation). "Accordingly, to maintain actions brought under Section 1983 against public benefit corporations, plaintiffs must show that those corporations maintained a custom or policy that deprived them of a constitutional right." McGrath, 917 F. Supp. 2d at 330; see also Connick v. Thompson, __U.S.__, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting Monell, 436 U.S. at 658, 690-1; Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (holding that in order to prevail on a Section 1983 claim against a municipal entity or public benefit corporation, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality [or public benefit corporation] caused the constitutional injury.").

Here, as is readily apparent, Plaintiff has not alleged

13

any "injury to a constitutionally protected right . . . that . . . was caused by a policy or custom of the [NHCC] or by a[n] [NHCC] official responsible for establishing final policy.'" Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) (internal quotations and citation omitted). Accordingly, Plaintiff's claims against the NHCC are dismissed with prejudice unless Plaintiff files an Amended Complaint stating a plausible Monell claim against the NHCC within thirty (30) days from the date this Order is served upon him.

D. Negligence Claim

Apart from Plaintiff's Section 1983 claims purporting to allege the deprivation of his Eighth Amendment right to adequate medical treatment, affording the pro se Complaint a liberal construction, it appears that Plaintiff also seeks to assert a constitutional claim arising from the alleged dangerous condition that allegedly caused him to fall. Such claim does not implicate a constitutional deprivation. See, e.g., Carr v. Canty, No. 10-CV-3829 (BSJ)(KNF), 2011 WL 309667, *2 (S.D.N.Y. Jan. 19, 2011) ("'[C]ourts have held that allegations of wet conditions leading to a slip-and-fall will not support a Section 1983 claim even where . . . the plaintiff [] alleges that the individual defendants had notice of the wet condition but failed to address it.'"), quoting Edwards v. City of New York, No. 08-CV-5787, 2009 WL 2596595, at *3 (S.D.N.Y. Aug. 24, 2009); Jennings v. Horn, No. 05-CV-9435, 2007 WL 2265574, at *5 (S.D.N.Y. Aug. 7, 2007) ("[S]lippery prison floors,

14

at best, pose a claim of negligence, which is not actionable under the United States Constitution."); see also Powers v. Gipson, No. 04-CV-6883L(P), 2004 WL 2123490 (W.D.N.Y. 2004) (sua sponte dismissing in forma pauperis complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, explaining that "[t]he claim that defendants were negligent in failing to clean up the water that caused plaintiff to slip, without more, fails to provide him with a basis for a federal claim, since mere negligence on the part of state officials is not actionable under § 1983); Nauden v. Maha, No. 04-CV-0171SC, 2004 WL 1145916, *1 (W.D.N.Y. Apr. 7, 2004) (sua sponte dismissing in forma pauperis complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because "[i]t is abundantly clear to the Court that plaintiff is alleging nothing more than a claim of negligence against the defendants for their alleged creation of a dangerous condition which caused him to slip and fall.").

Here, Plaintiff alleges nothing more than that he slipped and fell on a wet floor, and that there were "no wet floor signs out to warn anybody of the dangers ahead." Compl. at ¶ IV. At best, Plaintiff has alleged a negligence claim, and not a constitutional deprivation. Daniels v. Williams, 474 U.S. 327, 330-31, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986) (negligence claims do not rise to the level of a constitutional violation). Accordingly, even if asserted against a proper defendant, the Court declines to assert supplemental jurisdiction over this state law

claim and Plaintiff may pursue such claim in state court. See Sylla v. City of New York, No. 04-CV-5692 (ILG), 2005 WL 3336460, *8 (E.D.N.Y. Dec. 8, 2005) (citing Castellano v. Bd. of Trustees, 937 F.2d 752, 758 (2d Cir. 1991) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")); see also Nauden, 2004 WL 1145916, at *1 ("Plaintiff's avenue for relief for his claims of negligence in state court, not a claim in federal court under 42 U.S.C. § 1983").

## CONCLUSION

For the reasons set forth above, Plaintiff's application to proceed in forma pauperis is granted, but the Complaint is sua sponte dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b) **unless Plaintiff files an Amended Complaint alleging a viable Section 1983 claim against a proper defendant as set forth above within thirty (30) days from the date that this Order is served upon him.** If Plaintiff fails to timely file an Amended Complaint, the Complaint shall be dismissed with prejudice, judgment shall enter, and the case will be closed. The Amended Complaint must be labeled "Amended Complaint" and must bear docket number 12-CV-3132 (JS)(GRB).

Plaintiff is advised that an Amended Complaint does not simply add to the original Complaint. Once an Amended Complaint is filed, it completely replaces the original. Therefore, it is

16

important for Plaintiff to include all necessary information that was in the original Complaint in the Amended Complaint. The Court will screen any timely filed Amended Complaint pursuant to 28 U.S.C. §§ 1915, 1915A.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore <u>in</u> <u>forma</u> <u>pauperis</u> status is denied for the purpose of any appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

<u>/s/ JOANNA SEYBERT</u>
Joanna Seybert, U.S.D.J.

Dated: July <u> 25 </u>, 2012
Central Islip, New York

17