FILED
CLERK
11/21/2012 10:17 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
WILLIAM JANDRES,

                Plaintiff,
                                          ORDER
     -against-                            12-CV-3132(JS)(GRB)

COUNTY OF NASSAU COUNTY,
JOHN DOE, JANE DOE, NASSAU
COUNTY CORRECTIONAL CENTER,
ARMOR HEALTH CARE C/INC.,
JOHN DOE, JANE DOE, DOCTOR K,
P.H. SMITH, OFFICER EVANS,
BADGE # 210, SERGEANT MILLER,
CAPT. FORD, NASSAU COUNTY
MEDICAL CENTER, JOHN AND JANE
DOE, ORTHOPEDIC SPECIALIST
MR. CARLOS, and NURSE MS. PEG,

                Defendants.
----------------------------------X
WILLIAM JANDRES,

                Plaintiff,

     -against-                            12-CV-4984(JS)(GRB)

COUNTY OF NASSAU, ARMOR
CORRECTIONAL HEALTH CARE INC.,
P.H. SMITH, CAPT. FORD, DR. K,
NURSE GREG, MICHAEL SPOSATO,
ORTHOPEDIC SPECIALIST MR. CARLOS,
NURSE MS. PEG, NASSAU COUNTY
CORRECTIONAL FACILITY,

                Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:     William Jandres, Pro Se
                   79047053
                   Queens Private Detention Facility
                   182-22 150th Ave.
                   Jamaica, NY 11413

For Defendants:    No Appearances

SEYBERT, District Judge:
```

By Order dated July 25, 2012, the undersigned granted the application of incarcerated pro se plaintiff William Jandres ("Plaintiff") to proceed in forma pauperis in relation to his Complaint assigned docket number 12-CV-3132(JS)(GRB), and sua sponte dismissed the Complaint with leave to file an Amended Complaint by August 25, 2012. By letter dated August 24, 2012, Plaintiff sought a ninety-day extension of the Court's deadline. By Order dated September 4, 2012, the Court extended Plaintiff's deadline to file an Amended Complaint through October 22, 2012.

Also on September 4, 2012, the Court received Plaintiff's Amended Complaint. The Amended Complaint alleges pursuant to 42 U.S.C. § 1983 that Plaintiff's Eighth Amendment rights to were violated by the defendants, namely the County of Nassau ("the County"), Nassau County Correctional Center ("the Jail"), Armor Health Care C/Inc. ("Armor"), Doctor K ("Dr. K"), P.H. Smith ("Smith"), Officer Evans, Badge # 210 ("Officer Evans"), Sergeant Miller, Capt. Ford, Nassau County Medical Center ("NCMC"), Orthopedic Specialist Mr. Carlos, Nurse Ms. Peg, and John and Jane Does (collectively, "the Defendants"). More specifically, Plaintiff claims that the Defendants were deliberately indifferent to his serious medical needs and, as a result, Plaintiff seeks to recover $27 million in damages.

On October 1, 2012, Plaintiff filed a new Complaint, assigned docket number 12-CV-4984(JS)(GRB) (the "Second Action"),

against all of the same Defendants as those named in the Amended Complaint filed by Plaintiff under docket number 12-CV-3132 (JS) (GRB) (the "First Action"). In addition, Plaintiff names Nurse Greg and Sheriff Michael Sposato as defendants in the Second Action. Like the First Action, the Second Action is brought pursuant to Section 1983 and purports to allege that Plaintiff's Eighth Amendment rights were violated by the Defendants in that they were deliberately indifferent to his serious medical needs. As a result, Plaintiff seeks to recover $30 million in damages in the Second Action.

Upon review of the Amended Complaint in the First Action and the Complaint in the Second Action, the Court finds that consolidation is appropriate pursuant to Federal Rule of Civil Procedure 42. Both actions involve common questions of law and fact, and consolidation would serve the interests of judicial economy and would avoid unnecessary costs or delay. "The Second Circuit has long adhered to the first-filed doctrine in deciding which case to dismiss when there are competing litigations. Where there are several competing lawsuits, the first suit should have priority, . . . ." Kellen Co. v. Caphalon Corp., 54 F. Supp. 2d 218, 221 (S.D.N.Y. 1999) (internal quotations, alterations and citations omitted); see also Adam v. Jacobs, 950 F.2d 89, 92 2d Cir. 1991). Accordingly, **the Clerk of the Court shall consolidate the two above-captioned cases under the first filed case, 12-CV-**

**3132(JS)(GRB) and shall close the case with docket number 12-CV-4984(JS)(GRB).** Any further filings in that case shall be made under docket number 12-CV-3132(JS)(GRB). Given the consolidation, the pending in forma pauperis application in the Second Action is denied as moot.

For the reasons set forth below, the claims against the the Jail, the County, NCMC, Sergeant Miller, Capt. Ford and Sheriff Sposato are sua sponte dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

## The Allegations

Plaintiff's Amended Complaint and Complaint in the Second Action purport to allege that Plaintiff's Eighth Amendment rights were violated because he has been denied medical treatment for various ailments. More specifically, Plaintiff describes that when he arrived at the Jail on March 28, 2011, he was feeling pain in his neck and left shoulder that Plaintiff attributes to a November 10, 2010 car accident. Am. Compl. at 6. Plaintiff claims that he "put in a few sick call sheets to the Nassau County Medical Center [] requesting an evaluation of my injuries." Id. Plaintiff alleges that his sick call slips were denied because NCMC was "leaving the jail" since their "contract was up." Id. Plaintiff claims that "I should have been properly evaluated for pinpointing exactly what my injuries were, followed by treatment. . . . None of this accured [sic]." Id.

4

Plaintiff next describes that, on August 10, 2011, he slipped and fell on a wet floor while walking accompanied by Officer Evans. Am. Compl. at 7. According to Plaintiff, Officer "Evans filled out an injury report, but failed to get me proper medical care." Id. Plaintiff claims that Officer Evans "should have followed procedures and reported it to his supervisors who then should have taken me to an outside hospital." Id. Plaintiff further claims that Officer Evans "was aware of the fact that I had sustained some serious injuries" but instead "refus[ed] to get me help . . . [and] . . . sent me to the new care provider called 'Armor Correctional Health, Inc.'" Id. at 7-8. Once at the health clinic later that day, Plaintiff claims that he provided the injury report to the "doctors and nurses that I saw" and advised them that his back, neck, left shoulder and right knee were all causing him "severe pain." Id. at 9. Plaintiff claims that the doctors and nurses "dismissed it lightly, saying it was normal to be sore after a fall." Id.

On September 22, 2011 and October 19, 2011, Plaintiff claims that he was told by a nurse that he would be seen by a doctor, but that never happened. Id. at 10. According to Plaintiff, he was finally seen by a doctor on November 22, 2011, who allegedly diagnosed Plaintiff with having arthritis and denied his requests to have X-rays or MRIs taken. Id. Plaintiff claims that the doctor said that he would be scheduled for a consult with

an orthopedic specialist, but that did not happen. Id. at 11. Rather, on December 1, 2011, Plaintiff began physical therapy and, "a couple of months later" Plaintiff was examined by orthopedic specialist "Mr. Carlos." Id. Mr. Carlos is alleged to have sent Plaintiff for an MRI of his back and left shoulder though Plaintiff complains that he should have also had an MRI taken of his knee. Id. at 12. The MRI is alleged to show that Plaintiff has a bulging disc on his left shoulder and "an impingement & downslope of the acromian [sic]." Id. According to Plaintiff, physical therapy continued but his requests for an MRI of his knee were ignored even though his knee "kept popping out." Plaintiff claims that Mr. Carlos informed Plaintiff that Armor did not allow for him to order an MRI of Plaintiff's knee because it "cost[s] too much money." Id. Plaintiff claims that "a couple of weeks later" his physical therapy was discontinued. Id. at 13.

Plaintiff also alleges that, on June 18, 2012, he was seen by "P.H. Smith as a result of all of the sick call sheets I filled out previously." Compl. in the Second Action at 6. Plaintiff describes that he told P.H. Smith that Plaintiff was in pain, that the left side of his body was numb, that he was having severe headaches, and that his "right knee kept popping out of place simply by walking." Id. P.H. Smith is alleged to have acknowledged that Plaintiff has a bulging disc, impingement, and downslope of the left shoulder, but advised Plaintiff that there is

nothing she could do except give Plaintiff Naproxin because "Armored Company Insurance would not cover any of my treatment." Id.

Plaintiff next alleges that he was taken to the health clinic by wheel chair after reporting severe headaches and dizziness on June 19, 2012. Compl. in the Second Action at 7. Plaintiff claims that he was seen by two "Jane Does" who work for "Armor Correctional Inc. and the County of Nassau." Id. Plaintiff alleges that "the two ladies did not help me when I reported numbness to the face, tongue, left arm and left leg. They just gave me 500 mg Tylenol and told me it was nothing." Id. According to Plaintiff, the "two ladies Jane Doe and Jane Doe were aware of my serious medical needs yet failed to provide or seek proper medical treatment for me." Id.

The next day, June 20, 2012, Plaintiff claims that he was again not feeling well and was taken back to the health clinic, where he was seen by P.H. Smith and "a male nurse Mr. Greg." Compl. in the Second Action at 9. Plaintiff alleges that he reported pain from his neck to his head and numbness to his face, tongue, left arm, and left leg and foot. Id. Plaintiff claims that he requested that he be taken to the hospital but P.H. Smith said that "insurance would not pay for it" and instead instructed Mr. Greg to give Plaintiff Flexerol and another, unspecified medication. Id.

The next day, June 21, 2012, Plaintiff was taken to "Nassau County Hospital" following his complaints of pain, numbness dizziness, and paralysis to his left eye in that he could not close it. Id. at 11. At the hospital, Plaintiff claims he was diagnosed with Bells Palsy and was advised by an unidentified doctor that, had Plaintiff gotten medical treatment sooner, the medication would have been more effective. Id. Plaintiff claims that although the doctor prescribed tear drops and ointment for his eye on June 21, 2012, Plaintiff did not receive the drops or ointment until June 29, 2012. Id. at 13. Plaintiff describes that his eye was burning with pain during the time he was without the medication. According to Plaintiff, he was visited by Dr. K on June 26, 2012, who allegedly ignored Plaintiff's request for the tear drops and ointment. Plaintiff further claims that he ran out of the ointment in July and was given a new prescription by the "eye doctor John Doe" but it has not been filled by "Armor Correctional Health Inc and there [sic] workers." Id. at 14. Plaintiff claims that his "eye is burning with pain throughout the day and night." Id.

Plaintiff claims that he was "seen by Ortho Mr. Carlos and Nurse Peg" on August 22, 2012 because Plaintiff was experiencing pain in his lower back, neck, left shoulder and right knee. Id. at 5; see also Compl. in Second Action at 5. Plaintiff also reported that he was paralyzed on the left side of his face and body. Compl. in Second Action at 5. According to Plaintiff,

8

Mr. Carlos advised Plaintiff that he needed a "whole new knee replacement" but that there is no "treatment for his injuries" available.

DISCUSSION

I. The Prison Litigation Reform Act

The Prison Litigation Reform Act, codified at 28 U.S.C. § 1915, requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i-iii); 28 U.S.C. § 1915A(a) & (b); Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). The Court is required to dismiss the action as soon as it makes such a determination. 28 U.S.C. § 1915A(a).

It is axiomatic that pro se complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read the Plaintiff's pro se Complaint liberally, Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); Chavis v. Chappius, 618 F.3d 162, (2d Cir. 2010), and to construe the allegations therein "'to raise the strongest arguments'" suggested. Chavis, 618 F.3d at 170 (quoting Harris v. City of New York, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the

9

proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 124 (2d Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009)); see also Jackson v. Birmingham Board of Education, 544 U.S. 167, 171, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005).

A complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citations omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

II. Section 1983

Section 1983 provides that:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United states . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

10

42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)). Section 1983 does not create any independent substantive right; but rather is a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see also Rosa R. v. Connelly, 889 F.2d 435, 440 (2d Cir. 1989). With these standards in mind, the Court must consider the Plaintiff's Section 1983 claims against the Defendants.

   A.   Claims against the Jail

As was detailed in the Court's July 25, 2012 Order, the Jail is not a sueable entity because it is an administrative arm of Nassau County. See Order, dated July 25, 2012, Seybert, D.J. at 8-9. "[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); see also In re Dayton, 786 F. Supp. 2d 809, 818 (S.D.N.Y. 2011); Hawkins v. Nassau Cnty. Corr. Facility, 781 F. Supp. 2d 107, 109 at n. 1 (E.D.N.Y. 2011); Melendez v. Nassau

11

County, No. 10-CV-2516 (SJF)(WDW), 2010 WL 3748743, at *5 (E.D.N.Y. Sept. 17, 2010) (dismissing claims against Nassau County Sheriff's Department because it lacks the capacity to be sued). Notwithstanding the Court's guidance, Plaintiff continues to name the Jail as a Defendant. Because the Jail is an administrative arm of Nassau County, without an independent legal identity, it lacks the capacity to be sued. Accordingly, Plaintiff's claims against the Jail are dismissed without prejudice.

  B. <u>Claims against Nassau County</u>

  Again, as was detailed in the Court's July 25, 2012 Order, a Section 1983 claim against a municipal entity such as Nassau County, must allege "an injury to a constitutionally protected right . . . that . . . was caused by a policy or custom of the municipality or by a municipal official 'responsible for establishing final policy.'" <u>Hartline v. Gallo</u>, 546 F.3d 95, 103 (2d Cir. 2008) (quoting <u>Skehan v. Village of Mamaroneck</u>, 465 F.3d 96, 108-109 (2d Cir. 2006) <u>overruled on other grounds by</u> <u>Appel v. Spiridon</u>, 531 F.3d 138, 140 (2d Cir. 2008)); <u>see</u> <u>also</u> <u>Monell v. Dep't of Social Services of City of New York</u>, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "Local governing bodies . . . may be sued for constitutional deprivations pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." <u>Monell</u>, 436 U.S. at 690-91 (citations omitted). To

12

establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of the policy-making officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. Sulehria v. City of New York, 670 F. Supp. 2d 288, 320 (S.D.N.Y. 2009); see also Davis, 224 F. Supp. 2d at 478.

Here, Plaintiff's pleadings are wholly devoid of any allegations to support a plausible municipal liability claim. Even affording the pro se Complaint and Amended Complaint a liberal construction as this Court is required to do, there is simply no basis for this Court to construe a plausible Section 1983 claim against Nassau County. Accordingly, Plaintiff's Section 1983 claims against Nassau County are dismissed without prejudice.

C. Claims against NCMC[1]

---

[1] NCMC is one of the facilities managed by the Nassau Health Care Corporation ("NHCC"), a public benefit corporation created under New York law, see N.Y. Pub. Auth. Law §§ 3400-3420. Accordingly, Plaintiff's claims against NCMC are construed to be claims against NHCC.

13

Similarly, Plaintiff continues to name NHCC as a defendant but has not included any allegations of the sort specified in the Court's July 25, 2012. Accordingly, Plaintiff again fails to allege a plausible Section 1983 claim against NHCC. Public benefit corporations, such as the NHCC, are municipal entities for the purpose of Section 1983. See, e.g. McGrath v. Nassau Health Care Corp., 217 F. Supp. 2d 319, 330 (E.D.N.Y. 2002) ("Public benefit corporations are governmental entities for Section 1983's purposes."); Estes-El v. N.Y. Dep't of Motor Vehicles Office of Admin. Adjudication Traffic Violation Bureau, No. 95-CV-3454, 1997 WL 342481, at * 4 (S.D.N.Y. June 23, 1997) (holding that the liability of a public benefit corporation under Section 1983 "is governed by the principles set forth in Monell . . . and its progeny."); Sewell v. N.Y.C. Transit Auth., Nos. 90-CV-3734, 91-CV-1274, 1992 WL 202418, at * 2 (E.D.N.Y. Feb. 10, 1992) ("The 'policy or custom' requirement of Monell applies to public corporations as well as to municipalities. . . . Hence, in order to maintain a cause of action under Section 1983 against [a public benefit corporation], the plaintiff must plead that an impermissible 'policy or custom' of that public benefit corporation denied him his federal rights."); see also Dangler v. N.Y.C. Off Track Betting Corp., 193 F.3d 130, 142–43 (2d Cir. 1999) (applying Monell to claims against the OTB, a public benefit corporation). "Accordingly, to maintain actions brought under Section 1983

against public benefit corporations, plaintiffs must show that those corporations maintained a custom or policy that deprived them of a constitutional right." McGrath, 917 F. Supp. 2d at 330; see also Connick v. Thompson, --- U.S. ----, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting Monell, 436 U.S. at 658, 690-1; Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (holding that in order to prevail on a Section 1983 claim against a municipal entity or public benefit corporation, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality [or public benefit corporation] caused the constitutional injury.").

Here, as is readily apparent, Plaintiff has not alleged any "injury to a constitutionally protected right . . . that . . . was caused by a policy or custom of the [NHCC] or by a[n] [NHCC] official responsible for establishing final policy .'" Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) (internal quotations and citation omitted). Accordingly, Plaintiff's claims against the NHCC are dismissed without prejudice.

   D.   Claims against Sergeant Miller, Capt. Ford
        and Michael Sposato

Although Plaintiff names Sergeant Miller, Capt. Ford and

Michael Sposato as defendants, he includes no substantive allegations against any of them, nor does he even mention them in the body of the Complaint or Amended Complaint. Because "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004), Plaintiff has failed to allege a plausible Section 1983 claim against Sergeant Miller, Capt. Ford and Michael Sposato. Indeed, "a complaint based on a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law." Icangelo v. Judge Henry, et al., 09-CV-5137(SJF)(ARL) (E.D.N.Y. Jan. 20, 2010) (citing Rosa R. Connelly, 889 F.2d 435, 437 (2d Cir. 1989); Johnson v. Barney, 360 F. Appx. 199, 201 (2d Cir. 2010)) (add'l citation omitted). Given the absence of any allegations of conduct attributable to Sergeant Miller, Capt. Ford and Michael Sposato, Plaintiff's Section 1983 claims against them are implausible as a matter of law and are thus dismissed without prejudice.

  E. <u>Claims against Armor and Officer Evans</u>

    Plaintiff also names Armor and Officer Evans as defendants. Armor is a private company contracted to perform medical services for inmates at the Nassau County Correctional Center. Cofield v. Armor Corr. Health, Inc., No. 12-CV-1394 (SJF)(ETB), 2012 WL 12222326, *2 (E.D.N.Y. Apr. 11, 2012). A

16

private employer may be held liable under Section 1983 for the acts of its employees where the employee acted pursuant to the employer's official policy, or where the private entity employer was jointly engaged with state officials or its conduct is chargeable to the state, or where the employer authorized or participated in the alleged constitutional deprivation. Id. (citing Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002)). In addition, "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that 'action pursuant to official . . . policy of some nature caused a constitutional tort.'" Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990) (quoting Monell, 436 U.S. at 691, 98 S. Ct. at 2036 (emphasis in original)) (internal citations omitted); see also White v. Moylan, 554 F. Supp. 2d 263, 267–68 (D. Conn. 2008); Martin v. Lociccero, 917 F. Supp. 178, 184 (W.D.N.Y. 1995).

Here, though thin, Plaintiff has alleged that he was advised on several occasions that his alleged necessary medical treatment was denied because it was too expensive and would not be "covered" by Armor. Such allegations, at this early junction render plausible Plaintiff's Section 1983 claim against Armor. Similarly, Plaintiff's deliberate indifference claims, though dubious, shall proceed against Officer Evans. Affording the Plaintiff's claims a liberal construction, Plaintiff alleges that

17

Officer Evans did not follow the Jail's procedures in seeking proper medical treatment for Plaintiff following Plaintiff's fall on August 10, 2011. Accordingly, the Clerk of the Court is directed to issue Summonses for Armor and Officer Evans and to forward copies of the Complaint, the Amended Complaint and this Order, together with the Summonses, to the United States Marshal Service for service upon Armor and Officer Evans forthwith.

> F. Claims against Dr. K, P.H. Smith, Mr. Carlos, Ms. Peg and the John and Jane Doe Defendants

Though Plaintiff seeks to sue the above individual Defendants pursuant to Section 1983, he has not sufficiently identified them such that the United States Marshal Service ("USMS") will not be able to effect service of the Summons, Complaint and Amended Complaint on these individuals without more information. The Second Circuit has held that district courts must provide incarcerated pro se litigants with reasonable assistance in investigating the identity of "John Doe" officers. See Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997) (per curiam). Accordingly, the Court hereby orders: (1) that the Clerk of the Court serve a copy of the Complaint, the Amended Complaint and this Order on the Nassau County Attorney; and (2) that the Nassau County Attorney's Office attempt to ascertain the full names of the individuals that Plaintiff seeks to sue as described in the pleadings and provide the address where each such Defendant can be served to the Court and the Plaintiff within thirty (30) days of the date this Order is

served upon it.  Once the information is provided to the Court by the Nassau County Attorney's Office, Plaintiff's Complaint shall be deemed amended to reflect the full names of the "John and Jane Doe" Defendants, as well as those named by Plaintiff as "Dr. K", "P.H. Smith", "Mr. Carlos" and "Ms. Peg", summonses shall be issued as to those Defendants and the USMS shall serve those Defendants.

## CONCLUSION

For the reasons set forth above, Plaintiff's application to proceed in forma pauperis is granted, but the Complaint is sua sponte dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b) in part, as set forth above.  Plaintiff claims against the Jail, the County, NHCC, Sergeant Miller, Capt. Ford and Sheriff Sposato are dismissed without prejudice.  Plaintiff's claims against Armor and Officer Evans shall proceed and the Clerk of the Court is directed to forward copies of the Summonses, the Complaint, the Amended Complaint and this Order to the USMS for service upon Armor and Officer Evans forthwith.  Finally, no summonses shall issue at this time for the Defendants identified by Plaintiff as "John Doe", "Jane Doe", "Dr. K", "P.H. Smith", "Mr. Carlos" and "Ms. Peg". Rather, the Clerk of the Court is directed to serve a copy of the Complaint, the Amended Complaint and this Order on the Nassau County Attorney.  The Nassau County Attorney's Office's is requested to attempt to ascertain the full names of the individuals that Plaintiff seeks to sue as described in the pleadings and

provide the address(es) where each such Defendant can be served to the Court and the Plaintiff within thirty (30) days of the date this Order is served upon it. Once the information is provided to the Court by the Nassau County Attorney's Office, Plaintiff's Complaint shall be deemed amended to reflect the full names of the "John and Jane Doe" Defendants, as well as those named by Plaintiff as "Dr. K", "P.H. Smith", "Mr. Carlos" and "Ms. Peg", summonses shall be issued as to those Defendants and the USMS shall serve those Defendants.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   November   21  , 2012
         Central Islip, New York