```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
WILLIAM JANDRES,

                      Plaintiff,
                                         MEMORANDUM & ORDER
         -against-                       12-CV-3132(JS)(GRB)

ARMOR HEALTH CARE INC.; DR. K;
P.H. SMITH; OFFICER EVANS, Badge
# 210; MR. CARLOS, Orthopedic
Specialist; and MS. PEG, Nurse,

                      Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:         William Jandres, pro se
                       # 79047053
                       Federal Correctional Institute
                       P.O. Box 420
                       Fairton, New Jersey 08320

For Armor Defendants:  John J. Doody, Esq.
                       Suzanne E. Aribakan, Esq.
                       Lewis Brisbois Bisgaard & Smith, LLP
                       77 Water Street, Suite 2100
                       New York, New York 1005

For Officer Evans:     Ralph J. Reissman, Esq.
                       Nassau County Attorney's Office
                       One West Street
                       Mineola, NY 11501
```

SEYBERT, District Judge:

Currently before the Court is a motion to dismiss this consolidated action filed by defendants Theodora Kay-Njemanze, M.D. s/h/a Dr. K ("Dr. K"); Physician Assistant Rochelle Teague-Smith s/h/a P.H. Smith ("P.A. Smith"); Carlos Montero, Orthopedic Specialist s/h/a Mr. Carlos ("Dr. Montero," and together with Dr. K and P.A. Smith, the "Individual Armor Defendants"); and Armor

Correctional Health Services of New York, Inc. ("Armor," and together with the Individual Armor Defendants, the "Armor Defendants"). For the following reasons, the Armor Defendants' motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

## I. Procedural Background

Pro se plaintiff William Jandres ("Plaintiff") initially commenced the instant action on June 21, 2012 under Docket Number 12-CV-3132. The Court subsequently granted Plaintiff in forma pauperis status pursuant to his motion, but sua sponte dismissed his complaint with leave to re-plead. (See Docket Entry 6.) On September 4, 2012, Plaintiff filed the Amended Complaint.

Thereafter, Plaintiff filed a separate action before this Court under Docket Number 12-CV-4984. On November 21, 2012, the Court consolidated Plaintiff's two actions, finding that the cases involved common questions of law and fact. (See Docket Entry 11.)

---

[1] The following facts are taken from the Amended Complaint filed in Case No. 12-CV-3132 ("Am. Compl.," Docket Entry 8) and the Complaint filed in Case No. 12-CV-4984 ("Compl.") and the documents attached thereto and incorporated therein and will be presumed to be true for the purposes of this Memorandum and Order.

II. Factual Background

Plaintiff seeks to recover against the Armor Defendants and additional defendants "Ms. Peg," "Nurse Greg,"[2] and Officer Evans (collectively "Defendants")[3] for an alleged violation of his Eighth Amendment rights, asserting that Defendants were deliberately indifferent to his medical needs while housed at the Nassau County Correctional Center ("NCCC").

Plaintiff alleges that on March 28, 2011, when he arrived at NCCC, he was experiencing neck, back, and left shoulder pain. (Am. Compl. at 6.) Plaintiff thus "put in a few sick call sheets to the Nassau County Medical Center . . . requesting an evaluation of [his] injuries." (Am. Compl. at 6.) His sick call sheets were denied, however, purportedly because Nassau County Medical Center's contract with NCCC was about to expire. (Am. Compl. at 6.)

Thereafter, on August 10, 2011, Plaintiff slipped and fell on a wet floor while walking accompanied by Officer Evans. (Am. Compl. at 7.) Officer Evans filled out an injury report and sent Plaintiff to the "new care provider," Armor. (Am. Compl. at 7-8.) Officer Evans, however, did not report the incident to his

---

[2] After consolidation, it appears that Nurse Greg was inadvertently excluded from the docket sheet. The Clerk of the Court is directed to amend the docket to reflect Nurse Greg as a defendant in this action.

[3] Additional defendants have been dismissed in prior orders.

supervisors or send Plaintiff to an outside hospital. (Am. Compl. at 7.) Later that day, Plaintiff provided the injury report to the "doctors and nurses" and advised them that his back, neck, left shoulder, and right knee were all causing him "severe pain." (Am. Compl. at 9.) The doctors and nurses "dismissed it lightly, saying it was normal to be sore after a fall." (Am. Compl. at 9.) Plaintiff requested an MRI, but was told that Armor or its insurance would not pay for it. (Am. Compl. at 9-10.)

On two subsequent occasions, a nurse told Plaintiff that he would be seen by a doctor. (Am. Compl. at 10.) However, Plaintiff did not see a doctor until November 22, 2011. (Am. Compl. at 10.) At that time, the doctor diagnosed Plaintiff with arthritis, but denied Plaintiff's requests for X-rays or MRIs because, she said, Armor's insurance would not cover it. (Am. Compl. at 10-11.) The doctor informed Plaintiff that she would arrange for Plaintiff to see an orthopedic specialist. (Am. Compl. at 11.)

On December 1, 2011, Plaintiff began physical therapy and, "a couple of months later" Plaintiff was examined by orthopedic specialist, Dr. Montero. (Am. Compl. at 11.) Dr. Montero sent Plaintiff for an MRI of his back and left shoulder, but not for an MRI of Plaintiff's knee as Plaintiff had also requested. (Am. Compl. at 12.) The MRI revealed a bulging disc of Plaintiff's left shoulder and "an impingement & downslope of

4

the acromian [sic]." (Am. Compl. at 12.) Plaintiff's physical therapy continued for a few additional weeks. (Am. Compl. at 13.) Moreover, Plaintiff's knee "kept popping out," but Plaintiff's requests for an MRI of the knee were denied. (Am. Compl. at 12.) According to Plaintiff, Dr. Montero informed him that Armor would not allow for an MRI of the knee because it "cost[s] too much money." (Am. Compl. at 12.)

On June 18, 2012, Plaintiff met with P.A. Smith to discuss "all of the sick sheets" that Plaintiff filled out. (Compl. at 6.) Plaintiff told P.A. Smith that he was in pain, that the left side of his body was numb, that he was having severe headaches, and that his "right knee kept popping out of place simply by walking." (Compl. at 6.) P.A. Smith acknowledged that Plaintiff had a bulging disc, impingement, and downslope of the left shoulder, but advised him that there was nothing she could do except provide Plaintiff with Naproxin because "Armored Company Insurance would not cover any of [Plaintiff's] treatment." (Compl. at 6.)

The next day, Plaintiff was taken to the health clinic by wheel chair after reporting severe headaches and dizziness. (Compl. at 7.) At the health clinic, Plaintiff met with two "Jane Does" who work for "Armor Correctional Inc. and the County of Nassau." (Compl. at 7.) "[T]he two ladies did not help" Plaintiff and simply gave him 500 mg of Tylenol. (Compl. at 7.)

5

Plaintiff continued to experience pain and returned to the health clinic again on June 20, 2012. (Compl. at 9.) At that time, Plaintiff spoke with P.A. Smith and "Nurse Greg" and reported pain from his neck to his head and numbness to his face, tongue, left arm, and left leg and foot. (Compl. at 9.) Plaintiff requested that he be taken to the hospital but P.A. Smith said that "insurance would not pay for it" and instead instructed Nurse Greg to give Plaintiff Flexerol and another unspecified medication. (Compl. at 9.)

The next day, Plaintiff complained of pain, numbness, dizziness, and paralysis to his left eye and was taken to "Nassau County Hospital." (Compl. at 11.) An unidentified doctor at the hospital diagnosed Plaintiff with Bells Palsy and advised that if he had received medical treatment sooner, the medication would have been more effective. (Compl. at 11.) Although the doctor prescribed eye drops and ointment for Plaintiff's eye, Plaintiff did not receive the drops or ointment until June 29, 2012. (Compl. at 12.) In fact, Plaintiff met with Dr. K on June 26, 2012 and asked about the drops and ointment, though he still did not receive them until days later. (Compl. at 13.) When Plaintiff ran out of ointment, it was not refilled by Armor's workers. (Compl. at 14.)

Finally, on August 22, 2012, Plaintiff met with Dr. Montero and Nurse Peg. (Compl. at 5.) He reported pain in his lower back, neck, left shoulder, and right knee as well as

6

paralysis on the left side of his face and body. (Compl. at 5.) Dr. Montero advised Plaintiff that he needed a knee replacement but there was "no treatment" for his injuries. (Compl. at 5; Am. Compl. at 5.)

## DISCUSSION

The Armor Defendants now move to dismiss Plaintiff's consolidated action, arguing, inter alia: (1) that Plaintiff failed to exhaust his administrative remedies; (2) that Plaintiff has failed to state a claim against the Armor Defendants; and (3) that Plaintiff's claim for injunctive relief should be denied as moot. The Court will first address the applicable legal standard before turning to the merits of the Armor Defendants' motion.

I. Legal Standard

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for

7

relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

Because Plaintiff is litigating pro se, the Court reads his Complaint liberally, see, e.g., Mancuso v. Hynes, 379 F. App'x 60, 61 (2d Cir. 2010), and interprets his papers to "'raise the strongest arguments that they suggest.'" Corcoran v. N.Y. Power Auth., 202 F.3d 530, 536 (2d Cir. 1999) (quoting McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)).

## II. Failure to Exhaust Administrative Remedies

The Armor Defendants first assert that Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). The Court disagrees.

The PLRA states in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.

Ct. 983, 152 L. Ed. 2d 12 (2002). However, failure to exhaust is an affirmative defense, and the Supreme Court has held that "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). "Dismissal under Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint." Roland v. Smith, 907 F. Supp. 2d 385, 388 (S.D.N.Y. 2012) (citing McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).

Here, Plaintiff alleges: "I did use the prison grievance system by handing in many grievances but they also are incomplete due to [their] lack of proper investigation and care." (Am. Compl. at 2.) Plaintiff also attached various grievance forms to his initial complaint in this action. The Armor Defendants assert that the grievances Plaintiff has provided demonstrate that he complied with only the first step of a three-tiered grievance procedure. (Armor's Br., Docket Entry 27, at 12-13.) Moreover, the Armor Defendants argue that the most recent grievance provided, dated June 8, 2012, also includes a request from June 11, 2012 that Plaintiff provide additional information. (Armor's Reply Br., Docket Entry 32, at 3.) There is nothing else to show whether Plaintiff indeed provided additional information, and this action was commenced shortly thereafter.

9

However, the fact that Plaintiff has provided only the first step of his grievance process does not necessarily mean that he did not comply with the additional steps. As previously stated, Plaintiff is not required to affirmatively plead exhaustion, and the Court will dismiss on this basis only if the lack of exhaustion is apparent from the face of the complaint. The Court does note, though, that Plaintiff's allegation regarding a lack of investigation may be an admission that he failed to fully exhaust his remedies. At this stage, it is wholly unclear what Plaintiff intends to assert, and therefore non-exhaustion is not apparent.

Moreover, Plaintiff's allegation regarding the lack of investigation can be read to assert a potential excuse. Exhaustion may be excused if: (1) administrative remedies were unavailable; (2) the defendants forfeited the defense or acted in such a way as to estop them from raising it; or (3) "special circumstances" justify non-exhaustion. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) (internal quotation marks and citations omitted); see also Messa v. Goord, 652 F.3d 305, 309 (2d Cir. 2011). Insofar as Plaintiff intends to assert that administrative remedies were unavailable to him because Defendants refused to conduct an investigation or allow the grievances to go beyond the first step, this is a potential excuse. Cf. Williams v. Suffolk Cnty., No. 11-CV-5198, 2012 WL 6727160, at *5-6 (E.D.N.Y. Dec. 28, 2012).

Finally, Plaintiff has also filed a sur-reply, attempting to supply the Court with additional proof that he exhausted his administrative remedies or appropriately attempted to do so. (See Docket Entries 33-34.) Sur-replies, however, generally require permission of the Court. See, e.g., Kapiti v. Kelly, No. 07-CV-3782, 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) ("Allowing parties to submit surreplies is not a regular practice that courts follow, because such a procedure has the potential for placing a court 'in the position of refereeing an endless volley of briefs.'" (quoting Byrom v. Delta Family Care-Disability & Survivorship Plan, 343 F. Supp. 2d 1163, 1188 (N.D. Ga. 2004)). Plaintiff neither requested nor received approval to file his sur-reply. Nonetheless, Plaintiff is pro se and his submission supports the argument that Plaintiff has fully exhausted his grievances--or at least that Plaintiff has potentially done more than the attachments to his pleadings suggest. See Spencer v. Bellevue Hosp., No. 11-CV-7149, 2012 WL 1267886, at *3 n.2 (S.D.N.Y. Apr. 12, 2012) ("Nevertheless, because [the plaintiff] is pro se, and because consideration of her sur-reply does not alter the Court's analysis, I will treat it as part of [the plaintiff's] opposition to Defendant's motion.").

Accordingly, the Armor Defendants' motion to dismiss due to lack of exhaustion is DENIED.

III. Failure to State a Section 1983 Claim

The Armor Defendants further argue that, even if Plaintiff has exhausted his administrative remedies, Plaintiff has otherwise failed to state a claim for deliberate indifference to Plaintiff's medical needs pursuant to 42 U.S.C. § 1983 ("Section 1983"). The Court will separately address whether Plaintiff sufficiently stated a claim against the Individual Armor Defendants and against Armor.

    A.    The Individual Armor Defendants

To state a claim under Section 1983, a plaintiff must "'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'" Rae v. Cnty. of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)). In addition, a Section 1983 claim must allege the personal involvement of any individual defendant in the purported constitutional deprivation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)); see also Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009).

To establish an Eighth Amendment violation arising out of deliberate indifference to an inmate's medical needs, a plaintiff must allege: (1) a deprivation that is, in objective

terms, "sufficiently serious," and (2) that the defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). The Armor Defendants assert that Plaintiff has not sufficiently alleged his claim based upon these elements. The Court agrees, particularly because Plaintiff has not alleged that the Individual Armor Defendants knew of and disregarded an excessive risk.

First, as to Dr. Montero, Plaintiff essentially alleges that Dr. Montero refused to send Plaintiff for an MRI or surgery. However, these claims relate to a disagreement in treatment, which does not raise a constitutional violation. See Flemming v. City of N.Y., No. 03-CV-0662, 2009 WL 3174060, at *3 (E.D.N.Y. Sept. 30, 2009) ("Whether an MRI should have been done is a classic example of a matter for medical judgment as to the appropriate course of treatment and is not actionable under the Eighth Amendment." (internal quotation marks and citation omitted)); see also Wright v. Genovese, 694 F. Supp. 2d 137, 155 (N.D.N.Y. 2010).

Second, Plaintiff essentially alleges that P.A. Smith provided Plaintiff with particular medications but not hospitalization or additional treatment and that Dr. K delayed giving Plaintiff medication for two days and she refused stronger medication. Such claims are indicative of the larger picture here. Plaintiff's pleadings clearly indicate that he regularly received

treatment, though he may have disagreed with the course of treatment. The Individual Armor Defendants provided Plaintiff with, inter alia, various medications, physical therapy, and MRIs of his back and shoulder. Such allegations demonstrate that the Individual Armor Defendants were not deliberately indifferent to Plaintiff's medical needs. See Cephas v. Nassau Cnty. Corr. Ctr., No. 12-CV-1445, 2014 WL 537576, at *5-6 (E.D.N.Y. Feb. 10, 2014) (dismissing the plaintiff's deliberate indifference claim against Armor because, even though the plaintiff may not have received the medication he wanted, he did receive medication).

Third, Plaintiff does allege that he was diagnosed with Bells Palsy on June 21, 2012. However, Plaintiff presented with symptoms only days earlier, and P.A. Smith prescribed Plaintiff medication. See Hughes v. Salerno, No. 11-CV-9094, 2012 WL 6097775, at *3 (S.D.N.Y. Dec. 5, 2012) ("Each time plaintiff complained of symptoms, Dr. Salerno provided her with treatment responsive to, and commensurate with, the nature and severity of the symptoms."). When Plaintiff experienced paralysis, Armor immediately sent him to an outside hospital. While Plaintiff's allegations suggest that P.A. Smith was potentially negligent, he does not adequately allege that she was deliberately indifferent to Plaintiff's serious medical needs or that she violated Plaintiff's constitutional rights. See Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011) ("[T]he Supreme Court has held that 'a

14

complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'" (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976)).

Accordingly, the Armor Defendants' motion to dismiss Plaintiff's deliberate indifference claims against the Individual Armor Defendants is GRANTED and such claims are DISMISSED.

B. <u>Armor</u>

A private employer, such as Armor, may be held liable under Section 1983 for the acts of its employees where the unconstitutional act was authorized or undertaken pursuant to the official policy of the private entity employer and the employer was jointly engaged with state officials or its conduct is chargeable to the state. <u>Cofield v. Armor Correctional Health, Inc.</u>, No. 12-CV-1394, 2012 WL 1222326, at *2, (citing <u>Rojas v. Alexander's Dep't Store, Inc.</u>, 924 F.2d 406, 408 (2d Cir. 1990); <u>White v. Moylan</u>, 554 F. Supp. 2d 263, 268 (D. Conn. 2008); <u>Martin v. Lociccero</u>, 917 F. Supp. 178, 184 (W.D.N.Y. 1995)).

There is no respondeat superior liability for Section 1983 claims, however. <u>See</u> <u>Minneci v. Pollard</u>, --- U.S. ----, 132 S. Ct. 617, 625, 181 L. Ed. 2d 606 (2012); <u>Southerland v. City of N.Y.</u>, 681 F.3d 122, 137 (2d Cir. 2012)). Thus, without the claims against the Individual Defendants, Plaintiff's allegations suggest

15

little else upon which to base liability against Armor. Specifically, much of Plaintiff's remaining allegations pertain to unidentified individuals. (See Armor's Br. at 22 (summarizing various allegations against unspecified individuals).)

Plaintiff also raises allegations against "Ms. Peg" and "Nurse Greg." The Armor Defendants, however, are unable to identify Ms. Peg. (Armor's Br. at 1 n.5) Moreover, Plaintiff's claims against Ms. Peg and Nurse Greg essentially reiterate those against the Individual Armor Defendants and, in fact, are even weaker. Specifically, Plaintiff's only allegation against Ms. Peg is that she was present during Plaintiff's August 22, 2012 visit with Dr. Montero. (Am. Compl. at 5; Compl. at 5.) Plaintiff's only allegation against Nurse Greg is that he was present during Plaintiff's June 20, 2012 meeting with P.A. Smith. (Compl. at 9.) For the reasons stated above, these allegations are insufficient. Accordingly, Plaintiff's claims against Ms. Peg and Nurse Greg are sua sponte DISMISSED WITH PREJUDICE.

As Plaintiff has failed to allege a basis for liability against Armor, the Armor Defendants' motion to dismiss in this regard is GRANTED, and Plaintiff's claim against Armor is DISMISSED.

IV. Injunctive Relief

The Armor Defendants additionally move for dismissal of Plaintiff's claim for injunctive relief on the grounds of mootness

16

given that Plaintiff is no longer housed at the NCCC. (Armor's Br. at 24.) Plaintiff has stated his intention to withdraw his claim, (Pl.'s Opp. Br., Docket Entry 31, at 5), and the Court agrees that injunctive relief is now moot. See Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."). Accordingly, the Armor Defendants' motion to dismiss Plaintiff's claim for injunctive relief is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

V. Leave to Replead

Finally, the Armor Defendants assert that Plaintiff should not be permitted to amend because amendment would be futile. The Court agrees.

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Here, however, the Court finds that any amendment would be futile. Plaintiff has already once amended his Complaint in the instant action and essentially filed a similar complaint in the member case. Throughout these various iterations, Plaintiff has not alleged that the Armor Defendants acted with a culpable state of

17

mind or that they were deliberately indifferent to Plaintiff's medical needs. See Nelson v. Nassau Cnty. Sheriff Dep't, No. 13-CV-0477, 2013 WL 2120813, at *7 (E.D.N.Y. May 15, 2013) (dismissing the plaintiff's deliberate indifference claim with prejudice because the plaintiff did not allege a culpable state of mind (citing Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011); Palacio v. Ocasio, No. 02-CV-6726, 2006 WL 2372250, at *1 (S.D.N.Y. Aug. 11, 2006)). Accordingly, Plaintiff's claims against the Armor Defendants are DISMISSED WITH PREJUDICE.

CONCLUSION

For the foregoing reasons, the Armor Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. It is DENIED as to the Armor Defendants' argument regarding lack of exhaustion, but otherwise GRANTED, and Plaintiff's claims against the Armor Defendants are DISMISSED WITH PREJUDICE. Plaintiff's claim for injunctive relief is also DISMISSED WITH PREJUDICE.

Additionally, the Clerk of the Court is directed to amend the docket to reflect Nurse Greg as a defendant in this action. However, Plaintiff's claims against Nurse Greg and Ms. Peg are sua sponte DISMISSED WITH PREJUDICE.

The Court notes that Plaintiff's only remaining claim is that against Officer Evans, who has not moved to dismiss. Accordingly, Plaintiff's claim will move forward as against Officer Evans.

The Court certifies that pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to pro se Plaintiff.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March   31  , 2014
       Central Islip, NY